J-A06045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY WILLIAM WILSON JR. | : | |
| | : | |
| Appellant | : | No. 625 WDA 2021 |

Appeal from the Judgment of Sentence Entered March 3, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0014392-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY WILSON | : | |
| | : | |
| Appellant | : | No. 626 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 3, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0003686-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY W. WILSON, JR. | : | |
| | : | |
| Appellant | : | No. 627 WDA 2021 |

Appeal from the Judgment of Sentence Entered March 3, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000142-2020

J-A06045-22

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: JUNE 21, 2022**

Rodney Wilson appeals from the judgment of sentence imposed, following a guilty plea in which he pleaded guilty, over three separate docket numbers, to two counts of simple assault, one count of recklessly endangering another person (REAP), one count of carrying a firearm without a license, seven counts of possessing a firearm as a person prohibited, two counts of intimidating a witness, and one count of obstructing the administration of law.[1] For these offenses, the lower court sentenced Wilson to an aggregate term of two to four years of incarceration to be followed by five years of probation. In addition, the court, among other requirements, prohibited Wilson from having contact with the victim, Amanda Asbury. On appeal, Wilson presents three issues, wherein he principally asserts that the court abused its discretion in imposing the "no contact with victim" requirement and, too, in crafting an excessive sentence. Having thoroughly reviewed the record as well as the briefs submitted by the parties, we are unable to discern any abuse of discretion by the lower court. Therefore, we affirm.

Briefly, in May 2019, Wilson inflicted physical injuries on Asbury during a fight at her home. In November 2019, Asbury sought a Protection From Abuse (PFA) Act order against Wilson, which resultantly required him to forfeit

---

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2701(a)(1) & (3); 18 Pa.C.S.A. § 2705; 18 Pa.C.S.A. § 6106(a)(1); 18 Pa.C.S.A. § 6105(c)(6); 18 Pa.C.S.A. § 4952(a)(1); and 18 Pa.C.S.A. § 5101, respectively.

all of his weapons. *See* 23 Pa.C.S.A. § 6101, *et seq*. That same month, Asbury reported the May incident to the police.

When police officers went to arrest Wilson on charges stemming from the altercation, simple assault and REAP, they found a firearm in his possession[2] and, after obtaining a search warrant, uncovered more weapons in Wilson's residence. Under the PFA order, Wilson was prohibited from possessing a firearm. Moreover, Wilson did not have a permit to carry a concealed firearm. These discoveries led to the second series of charges brought against him, the firearms offenses.

After being released from county jail in January 2020, Wilson, on multiple occasions, communicated with Asbury via phone calls. Wilson, *inter alia*, implored Asbury to drop the PFA order against him. These contacts resulted in the third set of charges, namely witness intimidation.

In November 2020, Wilson pleaded guilty to the aforementioned offenses. Sentencing occurred some five months later, and in addition to being sentenced to a term of incarceration followed by probation, Wilson was forbidden from having any contact with Asbury. Prior to sentencing, the court noted that it had read Wilson's presentence investigation report (PSI).

After sentencing, Wilson filed a timely post-sentence motion, which was subsequently denied. Wilson then filed a timely notice of appeal. The relevant parties have complied with their obligations under Pennsylvania Rule of

---

[2] Specifically, a loaded firearm was found in the right front side of his pants.

- 3 -

Appellate Procedure 1925, and accordingly, this matter is ripe for review.

On appeal, Wilson presents three questions:

1. Did the trial court abuse its discretion when it imposed a no contact requirement with Amanda Asbury even though she did not request one but specifically requested that … Wilson receive treatment instead of incarceration?

2. Did the trial court abuse its discretion when it imposed a sentence of incarceration that is manifestly unreasonable and excessive and fails to take into consideration … Wilson's rehabilitation, medical, and psychological needs?

3. Did the court abuse its discretion when it considered, *inter alia*, withdrawn claims [against him] and not guilty decisions?

Appellant's Brief, at 3.

All three of Wilson's issues are presented as challenges to the discretionary aspects of his sentence. However, as the court points out, it is "curious" that Wilson is now objecting to the no contact order "since this specific condition was outlined by the Commonwealth as part of the agreed-upon terms of [Wilson's] plea at *both* the plea hearing … and the sentencing hearing[.]" Trial Court Opinion, 7/29/21, at 8 (emphasis in original).

At the plea hearing, after the Commonwealth presented to the court that there was, following negations between the parties, "an agreement … as to sentence … [for Wilson to] have no contact with the victim," Plea Hearing, 11/18/20, at 3, Wilson's counsel acquiesced to this provision. **See id**., at 4. Then, at the sentencing hearing, the Commonwealth reiterated "the agreement … made prior to the guilty plea … [which thereafter resulted in a

recommendation to the court of] no contact with the victim in this case[.]" Sentencing Hearing, 3/3/21, at 10-11. Again, no objection by Wilson or counsel was made. As reflected in his sentence, Wilson received precisely what he was promised under the terms of this agreement with the Commonwealth.

"Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Reichle*, 589 A.2d 1140, 1141 (Pa. Super. 1991). However, as a technical exception to the aforesaid rule, "[t]he determination of whether discretionary aspects of sentencing may be challenged after a guilty plea is entered depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa. Super. 1994).

More particularly, "where there are specific penalties outlined in the plea agreement, an appeal from a discretionary sentence will not stand." *Id*., at 20. This Court has emphasized that when a particular aspect of a sentence is "made part of a plea bargain, it would clearly make a sham of the negotiated plea process for courts to allow defendants to later challenge their sentence[.]" *Id*. Conversely, if there are aspects of the sentence that have not been agreed upon, a defendant may appeal on those bases. *See id*.

Because it appears that Wilson purports to raise this no contact claim under the auspice of a discretionary aspects of sentence challenge, which is

distinct from a legality of sentence or validity of guilty plea assertion, his challenge necessarily fails, given that it was an agreed-to part of his negotiated sentence.

However, we will assume, *arguendo*, that review is possible given the ambiguous nature of precisely how long the no contact condition, pursuant to the plea agreement, would last. ***See*** Sentencing Hearing, 3/3/21, at 11 (the Commonwealth stating: "[t]here is no agreement as to whether all these cases should run concurrent or consecutive[]"). Even reviewing this particular issue through a discretionary lens, Wilson would not be entitled to relief.

Our review of issues stemming from the discretionary aspects of sentencing is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect[, ***see*** Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence

- 6 -

> appealed from is not appropriate under the Sentencing Code.
>
> * * * *
>
> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

In this case, Wilson has filed a timely notice of appeal, filed the requisite motion to preserve the issue on appeal, and because he has included a facially appropriate 2119(f) statement, no fatal defect in his brief is apparent. Therefore, we proceed to Wilson's brief to ascertain whether he has raised a substantial question.

The entirety of his "question" raised is that the lower court "unreasonably issued a no[]contact requirement with his victim against the victim's expressed wishes for the totality of his 5-year probation sentence." Appellant's Brief, at 10. Although he indicates that this Court may find a substantial question "after reviewing a trial court's application of the § 9721(b) factors," *id*. (citation omitted) (impliedly after being first raised by an appellant), or if an appellant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth

in the Sentencing Code or a particular norm underlying the sentencing process," *id*. (citations omitted), beyond those rote recitations of how an appellant is capable of raising a substantial question, Wilson has provided absolutely nothing in his 2119(f) statement to establish that his no contact sentence, specifically, violates any type of sentencing precept. The only verbiage related to his presentation of a substantial question is the language quoted, *supra*.

While he later attempts to discuss whether he has raised a substantial question in the argument section of his brief, ***see id***., at 16-17, it is glaringly obvious that these paragraphs should have been placed within the earlier 2119(f) statement. As Wilson has failed to present a substantial question, or at least convince this Court of the same using any kind of authority to demonstrate his assertion, we are without jurisdiction to consider this particular aspect of his sentence.[3]

---

[3] Overlooking the misplaced nature of Wilson's contention that the court either violated the Sentencing Code or a fundamental norm in sentencing, his underlying claim *still* warrants no relief.

Wilson concedes that the Code allows "for reasonable conditions to be attached to probation orders." Appellant's Brief, at 17. He also indicates that "courts routinely impose no[]contact conditions and such conditions are neither unreasonable nor unduly restrictive." *Id*. Wilson further admits that "his guilty plea would likely lead to a no[]contact condition with … Asbury for a reasonable period[.]" *Id*. However, he avers that "[t]he imposition of the five years of no contact – against the expressed wishes of … Asbury – is manifestly unreasonable and excessive." *Id*.

Other than vaguely mentioning that the no contact aspect of his sentence was an "unduly restrictive [probation] condition[]," *id*., Wilson has

not clearly demonstrated that there has been any material deviation from the Sentencing Code or, more generally, sentencing norms. In fact, Wilson primarily utilizes this part of his brief to highlight why the court's reliance on a particular case is misplaced. However, we note that it was Wilson's obligation to show that a substantial question exists. Again, in the absence of a substantial question, we are without jurisdiction to entertain review of his discretionary aspects of sentencing claim.

Even assuming, somehow, he raised a substantial question, his argument holds no merit. We are sympathetic to the fact that, as Wilson conveys in his brief, Asbury appears to have not wanted the court to impose a no contact order. **See id**., at 14-15 (record citation omitted). While it is a relevant consideration, to which the court was well apprised, **see** Trial Court Opinion, 7/29/21, at 9 (illuminating that "it was aware of the victim impact statement contained [in the PSI report] where the victim stated that she 'was not seeking a no[]contact condition as part of any supervision period imposed on the defendant.'") (citation omitted), it was not obligated to adhere to the particular wishes of a victim in crafting Wilson's sentence.

In its opinion, the court remarked: "given the longstanding troubled history between [Wilson] and [Asbury] and the facts underlying these domestic violence and firearm cases, this court would have been acting well within its discretion in imposing this reasonable condition of probation [even] absent the parties' agreement." **Id**., 11. The court further stated that this no contact provision will help Wilson address "his rehabilitative needs and assist him in adjusting to a law-abiding life[.]" **Id**.

While Wilson takes umbrage with the court's use of **Commonwealth v. Koren**, 646 A.2d 1205 (Pa. Super. 1994), stating that the factual circumstances leading to a no contact provision in that case are different than the present matter, **Koren**'s legal principle is still instructive. Stated succinctly, a court can order a no contact condition when it "is reasonably calculated to aid in the defendant's rehabilitation." **Id**., at 1209 (citation omitted).

Considering the crimes Wilson pleaded guilty to in conjunction with the facts underpinning those crimes, beginning with physical harm inflicted on Asbury, the court found that attaching this no contact with the victim condition to the entire length of his probation would be a calculated way to rehabilitate Wilson. Other than faulting the court for what he believes is too lengthy a period of time and describing this condition as "victim blaming," Appellant's Brief, at 18, Wilson has failed to demonstrate, with any kind of authority, a compelling basis to find that the court abused its discretion. Correspondingly, there is no reason to reverse the lower court's determination in this domain.

In his second claim, Wilson contends that his sentence "was manifestly excessive and an abuse of discretion[.]" *Id*., at 18. As this challenge, too, is an appeal contesting the discretionary aspects of his sentence, we again must ascertain whether Wilson has presented a substantial question that would warrant review.

Much like his first attempt at demonstrating the existence of a substantial question, the second "question" baldly states that his sentence of two to four years of incarceration "for a first offense prohibited possession of firearm is manifestly unreasonable." Appellant's Brief, at 10; *see also id*., at 11 (noting that the court failed to consider "years and years of lawful behavior[]"). Reading between the lines, we will consider this question to be a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (stating that "an excessive sentence claim–in conjunction with an assertion that the court failed to consider mitigating factors–raises a substantial question[]") (citation omitted).

In the argument section of his brief, Wilson notes "copious mitigating factors, such as his 8 consecutive months of successful house arrest and previous 8 consecutive years of no law enforcement contact." Appellant's Brief, at 18-19. To that point, Wilson emphasizes that, prior to the events in question now, he had never been convicted of a crime of violence. *See id*., at 21. Wilson also notes his substance abuse, "which he has taken substantial steps to correct and avoid in the future." *Id*., at 22. Moreover, Wilson has "a

very serious and largely untreated traumatic brain injury[.]" *Id*., at 25. Wilson additionally faults the court's statement in its opinion wherein it indicated that he assaulted Asbury while there had been a PFA order in place. *See id*., at 25-26. In summary, Wilson, having accepted responsibility for his actions, believes that the court failed to address how incarceration would rehabilitate him. *See id*., at 26.

Wilson concedes, however, that his past included "DUI convictions, public drunkenness, possession of a controlled substance, and disorderly conduct convictions." *Id*., 25.

Sentencing that results in total confinement requires a court to consider the protection of the public, gravity of the offense as it pertains to the victim and community, and the rehabilitative needs of the defendant. *See* 42 Pa.C.S.A. § 9721(b). Appellate review of a sentence requires this Court to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the lower court to observe the defendant, which includes a PSI report; (3) the lower court's findings; and (4) the sentencing guidelines. *See* 42 Pa.C.S.A. § 9781(d).

The court, here, had the benefit of a PSI prior to sentencing Wilson. "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135

(Pa. Super. 2009) (citation omitted). Furthermore, we assume that the court was aware of the relevant information regarding an appellant's character and weighed those considerations along with the mitigating statutory factors. *See Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (quotation marks and citation omitted).

Additionally, as Wilson's sentence was within the standard range of the sentencing guidelines, it is presumably appropriate. *See Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa. Super. 2010). If, in conjunction with a standard range sentence, a PSI is utilized, there must be clear indicia evidencing that such a sentence is excessive or unreasonable. *See id*. As to evaluation of the sentencing factors, such a determination is within the province of the sentencing court, and "an appellate court [cannot] substitute its own weighing of those factors." *Commonwealth v. Bowen*, 975 A.2d 1120, 1123 (Pa. Super. 2009) (citation omitted). Our primary considerations are "whether the court imposed an individualized sentence, … or [whether a sentence is] clearly unreasonable [if it was a sentence] falling within the guidelines[.]" *Id*., at 1124.

> The court identifies that Wilson
>
> was convicted of 13 crimes for serious offenses . . . . Each of [Wilson's] crimes, standing alone, demonstrated an absolute disregard for the law and an unwillingness to lead a law-abiding life. They also highlight the danger that he poses to the victim and to the community in general and demonstrate the need to provide adequate deterrence for future criminal behavior.

Trial Court Opinion, 7/29/21, at 12-13. After considering Wilson's

- 12 -

rehabilitative needs and imposing probationary conditions to address them (such as, *inter alia*, drug and alcohol treatment), "the existence of any drug, alcohol, or mental issues did not outweigh," ***id***., at 14, the other more compelling factors, which dealt with the statutory considerations of both the public and victim.

At sentencing, the court specifically stated that it was "certainly sympathetic to the mental health issues and the drug and alcohol issues[.]" Sentencing Hearing, 3/3/21, at 13. The court also noted the break in time between Wilson's prior criminal offenses. ***See id***., at 14. However, it then indicated that it was "not entirely sure that just mental health treatment [was] going to stop any of this very long term behavior[.]" ***Id***. The court concluded that because there were three discrete incidents in this case, it was "an ongoing pattern, and what makes it very dangerous to … Asbury and the community is the fact that you apparently didn't learn anything from the PFA." ***Id***., at 15.

While it appears the lower court was factually incorrect when it stated,[4]

---

[4] "And then, with a PFA in effect, there's an additional assault on … Asbury and then when there's a PFA in effect, there's the intimidation of her, I'm assuming to get her to not bring charges or to drop the charges." Sentencing Hearing, 3/3/21, at 15.

It is unclear whether "assault" in this context meant a subsequent physical assault on Asbury. However, the court used the word "additional," implying it was cognizant about the assault leading to the crime in which he pleaded guilty. The court then went on to note that Wilson's crimes were derived from "three separate cases that occurred at three separate times."

and thereafter wrote, that Wilson assaulted Asbury while there was an active PFA order in place, such a statement does not appear to have been material in its overall disposition,[5] and the court thereafter reinforced that it was aware this case broadly dealt with three discrete issues: the original assault, possession of firearms while a PFA order was in effect, and subsequent witness intimidation. **See** Sentencing Hearing, 3/3/21, at 15. In any event, Wilson has not demonstrated that this was a materially false assumption as to a fact that was relevant to the court's construction of his sentence. **See** Appellant's Brief, at 12 (citation omitted).

Although we are understanding of Wilson's drug and alcohol issues as well as his lack of previous convictions of violence, we are not allowed to substitute our own weighing of the sentencing factors for that of the sentencing court. **See Bowen**, **supra**. The court, armed with a PSI, clearly considered all of the information it had available, including every single piece of mitigating evidence that was inherently in Wilson's favor, and reached a conclusion it deemed appropriate based on the relevant factors and circumstances. We cannot say that the court, after it placed its reasons on the record, abused its discretion in crafting a standard range sentence of two to

---

**Id**. Therefore, as best can be discerned, the court's verbiage is likely a misstatement or an imprecise usage of words.

[5] It is also worth noting that Wilson did not voice any objection or make any effort to correct the record contemporaneous to the court making its statement.

- 14 -

four years of incarceration. Therefore, Wilson is due no relief on this issue.

In his final claim, Wilson contests the court's utilization of "matters that were in excess of 10 years old or withdrawn," Appellant's Brief, at 28, when it decided what his proper sentence should be. In particular, "[t]he fact that … Wilson went a period of 8 years in his late 20s and early 30s with no contact with law enforcement should have been more closely considered when determining whether incarceration was necessary." *Id*., at 28-29.

Through a, yet again, generous reading of Wilson's 2119(f) statement, he contends that the court dually relied on old convictions in determining his sentence and also failed to consider the time he spent without any kind of involvement in the criminal justice system/process. *See id*., at 10. We will consider his contention, in total, to fairly suggest a substantial question insofar as he is arguing that the court failed to consider mitigating factors when it imposed an excessive sentence. *See Swope*, *supra*.

The court maintains that it cited Wilson's past offenses and involvement in the criminal justice system "to highlight that his overall conduct through the years showed a pattern of troubling conduct, [but] the court did not place any undue weight on the [prior] charges themselves." Trial Court Opinion, 7/29/21, at 18. "Rather, [the court] focused on admissions made by [Wilson] and simply took note of the individuals involved in each offense." *Id*. The court also noted Wilson's lack of criminal history for eight years, "which was a factor that weighed in [his] favor and was a large reason why [the] court accepted

the negotiated resolutions for probation[.]" *Id*.

Wilson cites no authority in this portion of his argument section, and it is unclear how this issue is materially distinguishable from his previous one. However, we reiterate that the court fully considered all of the relevant factors when it sentenced Wilson, including the nuances associated with not only his prior criminal acts, but also the criminal charges that were brought against him yet ultimately disposed of in a different manner.

Although, over two sentences, Wilson again states that a "misconstrued fact [i.e., that the court believed a simple assault had occurred while a PFA order was in place] apparently led to his incarceration[,]" Appellant's Brief, at 29, he has failed to demonstrate that the court *in fact* actually believed this to be the case instead of it being simply a misstatement or that the court improperly relied on this fact at sentencing.

In total, Wilson's three issues, which all pertain, at least arguably, to the discretionary aspects of his sentence, do not show that there has been any kind of abuse of discretion from the trial court. After reviewing Wilson's PSI and in tandem with a sentencing hearing that delved into not only Wilson's criminal acts and history with the victim, but also mitigating pieces of information, the court determined that two to four years of incarceration, to be followed by probation, was necessary for his rehabilitation. Accordingly, with Wilson having failed to present a salient basis that could lead to an abuse of discretion finding, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  06/21/2022